UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HOLLY M. OVERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 264 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Holly M. Overy brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Overy's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I. Procedural History**

Overy filed her applications for benefits on September 10, 2014, claiming that she became

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HOLLY M. OVERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 264 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Holly M. Overy brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Overy's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I. Procedural History**

Overy filed her applications for benefits on September 10, 2014, claiming that she became

unable to work on August 1, 2014. (Tr. 198-99.) In her Disability Report, Overy alleged disability due to depression, anxiety, fibromyalgia, and possible Ehlers-Danlos Syndrome.[1] (Tr. 297.) Overy was 33 years of age at the time of her alleged onset of disability. Her applications were denied initially. (Tr. 103-13, 115-19.) Following two administrative hearings, Overy's claims were denied in a written opinion by an ALJ, dated March 29, 2017. (Tr. 10-19.) Overy then filed a request for review of the ALJ's decision with the Appeals Council, which was denied on December 12, 2017. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Overy raises the following claims: (1) "The residual functional capacity (RFC) assessment supports a fully favorable decision" ; (2) "The ALJ failed to properly evaluate the remainder of Plaintiff's RFC"; (3) "The ALJ failed to fully and fairly develop the record"; and (4) "The ALJ failed to consider a closed period of disability." (Doc. 14 at 3.)

## II. The ALJ's Determination

The ALJ first found that Overy meets the insured status requirements of the Act through September 30, 2020. (Tr. 12.) She had not engaged in substantial gainful activity since August 1, 2014, the alleged onset date. *Id.* In addition, the ALJ concluded that Overy had the following severe impairments: depression, anxiety, obesity, Ehlers-Danlos syndrome, osteoarthritis, and bilateral carpal tunnel syndrome/status post carpal tunnel release. (Tr. 13.) The ALJ found that

---

[1] A group of connective tissue disorders characterized by hyperelasticity and fragility of the skin, hypermobility of the joints, and fragility of the cutaneous blood vessels and sometimes large arteries due to deficient quality or quantity of collagen. *Stedman's Medical Dictionary,* 1897 (28th Ed. 2006).

Overy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

As to Overy's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk for 6 hours total in an eight-hour workday. She can never operate foot controls with the right foot or left foot. She can operate hand controls with the bilateral hands frequently. She can handle items and use her fingers for manipulation with the bilateral hands frequently. The claimant can climb ramps and stairs occasionally but never climb ladders, ropes or scaffolds. She can balance, stoop, and crouch occasionally. She can never kneel or crawl. The claimant can never work at unprotected heights or with moving, mechanical parts. She can never operate a motor vehicle and never be exposed to whole body vibration. The claimant is limited to performing simple, routine tasks and making simple work-related decisions. She can never ambulate on unimproved terrain.

(Tr. 14-15.)

The ALJ found that Overy was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as cafeteria attendant, cashier, and mail clerk. (Tr. 17-18.) The ALJ therefore concluded that Overy was not under a disability, as defined in the Social Security Act, from August 1, 2014, through the date of the decision. (Tr. 19.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on September 10, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on

March 8, 2016, the claimant is not disabled under section
                1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively

disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to

make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical

findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Three of Overy's arguments relate to the ALJ's RFC determination. Overy also argues that the ALJ failed to consider a closed period of disability. The undersigned will address Overy's claims in turn.

**A.     RFC**

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

### 1. Fully Favorable RFC

The ALJ found that Overy could perform a limited range of light work. Among other

limitations, the ALJ stated that Overy could "sit, stand, or walk for 6 hours total in an eight-hour workday." (Tr. 14.)

Overy first argues that the ALJ's RFC determination supports a fully favorable decision, as Overy is only able to work six hours a day, rather than the eight hours a day required by Social Security law.

Overy's claim lacks merit. Light work is defined in the regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b). "Frequent" means occurring from one-third to two-thirds of the time. *See* Social Security Ruling (SSR) 83-10. Because frequent lifting or carrying involves being on one's feet up to two-thirds of an eight-hour workday, the full range of light work requires standing or walking, on and off, for a total of approximately six hours of an eight-hour workday. The ALJ did *not* find that Overy could perform *some combination of* sitting, standing, or walking for a total of six hours, as Overy suggests. Thus, the ALJ's RFC does not support a fully favorable decision.

## 2. Mental RFC

Overy next argues that the ALJ erred in assessing her mental RFC. Specifically, she claims that the ALJ "ignored all of the mental status examinations from Nurse Alwell," which included findings of "pressured speech, stressed affect, anxious affect, constricted affect, less-than-normal insight, and preoccupation with her physical pain." (Doc. 14 at 6-7.)

The ALJ found Overy's depression and anxiety were severe impairments at step two. (Tr. 13.) In determining Overy's RFC, the ALJ stated that there were "no abnormal objective findings

to explain such a severe degree of pain and mental health symptoms." (Tr. 16.) This determination is supported by the record.

The ALJ noted that Overy saw treating physician Anthony Guarino, M.D., in August 2014, the month of her alleged onset of disability, at which time her psychiatric examination was normal. (Tr. 13, 16, 503.) Overy's speech patterns were normal, her memory was intact, her mood and affect were normal, and her insight and judgment were normal. *Id.* Overy saw Dr. Guarino on a regular basis through November 2016. (Tr. 579-628, 771-849.) On subsequent examinations, Dr. Guarino occasionally noted Overy was depressed and that Effexor[2] helped; but consistently noted normal findings on psychiatric examinations. *Id.*

The ALJ acknowledged that Overy saw nurse practitioner Ivy Alwell, APRN, for complaints of depression and anxiety during the relevant period. (Tr. 16.) She stated that "there is no evidence of abnormal findings upon mental health status evaluation by the nurse." *Id.* The ALJ again noted that Dr. Guarino's treatment notes "consistently show normal findings upon psychiatric examinations." *Id.*

Overy points out that Nurse Alwell occasionally noted the following findings on examination: pressured speech, stressed affect, anxious affect, constricted affect, and fair insight and judgment. (Tr. 556, 670, 666, 662, 657, 657, 654, 651, 650, 648.) Although the ALJ did not specifically discuss these findings, this does not mean the evidence was not considered. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.") (internal citation omitted); *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("An ALJ's failure to cite specific

---

[2]Effexor is indicated for the treatment of depression and anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited March 19, 2019).

evidence does not indicate that such evidence was not considered[.]") (internal quotation marks and citation omitted).

Overy notes that pressured speech is a symptom of several mental health conditions. The ALJ, however, agreed that Overy's depression and anxiety were severe impairments and included limitations resulting from these impairments in Overy's RFC. The ALJ simply found that Overy was not as limited as she alleges. Nothing in Nurse Alwell's treatment notes establish greater limitations than those found by the ALJ.

State agency medical expert Stanley Hutson, Ph.D., completed a Mental Residual Functional Capacity Assessment on October 28, 2014. (Tr. 110-11.) Dr. Hutson expressed the opinion that Overy had moderate limitations in activity of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 107.) The ALJ accorded "significant weight" to Dr. Hutson's opinions, noting they were consistent with the record as a whole. (Tr. 17.)

The ALJ also properly considered Overy's daily activities and assessed her mental RFC consistent with her credible limitations. The ALJ's evaluation of the consistency between Overy's subjective reports and the record as a whole included consideration of Overy's testimony, the objective medical evidence of record, and Overy's daily activities. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). For example, Overy testified that she cares for her three children, including a two-year-old child and a disabled seven-year-old child; helps the seven-year-old with homework; does some household chores; shops; watches movies; uses a computer for social interaction; drives; attends her children's games and plays; and interacts with family and friends. (Tr. 16, 34, 49-51, 54-58, 313-23.) *See Haley v. Massanari,* 258 F.3d 742,

748 (8th Cir. 2001) (Significant daily activities may be inconsistent with claims of disabling pain). Additionally, the ALJ noted that Overy's medications provide some relief from her symptoms. (Tr. 588, 593, 598, 603, 609, 615, 620, 624.) *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")

The ALJ concluded that Overy had the mental RFC to perform simple, routine tasks, and make simple work-related decisions. (Tr. 15.) She explained that this RFC "limits the claimant to simple work tasks, which finding is fully supported by the claimant's demonstrated ability to interact with others and care for herself, her children, and her household to the extent noted above." (Tr. 17.) This finding is supported by the medical evidence, including the treatment notes of Dr. Guarino and the opinion of Dr. Hutson. Contrary to Overy's argument, Nurse Alwell's treatment notes do not demonstrate the presence of greater limitations than those found by the ALJ. Thus, the ALJ's mental RFC is supported by substantial evidence on the record as a whole.

### 3. Physical RFC

Overy next argues that the ALJ failed to fully and fairly develop the record in that the ALJ did not obtain any medical evidence addressing Overy's physical ability to function in the workplace. She contends that a medical opinion was warranted due to her carpal tunnel syndrome and her chronic pain.

The ALJ discussed Overy's carpal tunnel syndrome and pain, but found that there were no abnormal objective findings to explain such a severe degree of pain and symptoms. (Tr. 16.)

The ALJ noted that Overy saw pain management specialist Dr. Guarino in August 2014, near the time of her alleged onset of disability, with complaints of pain in her right elbow and shoulder, both arms and fingers, hip, and knees. (Tr. 16, 500.) Overy reported that her greatest problem was her knees, and that she had had knee problems since the age of nineteen. (Tr. 500.) Overy was also evaluated for Ehlers-Danlos syndrome due to complaints of joint dislocations since childhood. (Tr. 832.) Upon examination, Overy's gait was normal, she had full strength in the legs and arms, intact sensation of the bilateral lower extremities, and normal reflexes. (Tr. 502-03.) Overy did not have joint hypermobility or skin laxity on examination to support a diagnosis of Ehlers-Danlos. (Tr. 833.) Dr. Guarino noted that genetic testing was necessary for further evaluation, although there was no specific treatment for the condition even if the diagnosis was confirmed. *Id.* Dr. Guarino diagnosed Overy with osteoarthrosis and chronic pain. (Tr. 503.) He prescribed various medications, including Hydrocodone,[3] for Overy's pain. (Tr. 503-04.) Dr. Guarino recommended a knee brace, physical therapy, and weight loss for Overy's knee pain. (Tr. 833.) Overy saw Dr. Guarino approximately quarterly through November 2016, and he consistently noted normal physical examinations. (Tr. 772-833.) Dr. Guarino administered lumbar epidural steroid injections in April 2015 and July 2015 due to increased lower back and hip pain after Overy sustained a fall. (Tr. 601, 607.) On November 2, 2015, Dr. Guarino noted that Overy had seen a rheumatologist, who assessed possible Ehler-Danlos, although she would need genetic testing to make a definitive diagnosis. (Tr. 609.) Dr. Guarino assessed chronic pain, lumbar radiculopathy, and Ehlers-Danlos syndrome. (Tr. 613.) On July

---

[3]Hydrocodone contains a combination of an opioid (narcotic) pain reliever—hydrocodone—and a non-opioid pain reliever—acetaminophen. *See* WebMD, http://www.webmd.com/drugs (last visited March 19, 2019).

29, 2015, Dr. Guarino noted right heel tenderness and pain and diagnosed Overy with plantar fasciitis.  (Tr. 606-07.)

The ALJ next noted that June 2016 x-rays of the right knee revealed only mild osteoarthritis.  (Tr. 16, 761.)

The ALJ stated that on January 6, 2015, prior to undergoing carpal tunnel release surgeries, Martin Boyer, M.D. noted positive Tinel's sign[4] bilaterally, but no signs of wasting or weakness. (Tr. 16, 770.)   Dr. Boyer indicated that Overy had undergone EMG/nerve conduction testing upon the referral of Dr. Guarino, which was abnormal and consistent with carpal tunnel syndrome.  (Tr. 770, 747.)   Dr. Boyer recommended surgery, as Overy had tried nonoperative treatment and "the symptoms are disabling."  (Tr. 770.)   Dr. Boyer performed left carpal tunnel release on February 11, 2015.  (Tr. 766.)   At a March 27, 2015 follow-up, Overy reported pain and burning in the area of the incision.  (Tr. 762.)   On examination, Dr. Boyer noted no Tinel's, normal muscle power, and normal sensation and pulse.  *Id.*   On July 5, 2016, Dr. Boyer indicated that Overy's left side had done well following surgery but Overy wanted release surgery on the right.  (Tr. 757.)   On examination, Dr. Boyer noted positive Tinel's on the right, but no weakness or wasting.  *Id.* Overy underwent right carpal tunnel release on July 13, 2016.  (Tr. 754.)   On August 1, 2016, Dr. Boyer stated that the procedure went well and Overy was "looking great."  (Tr. 752.)   Overy was "symptom free," and could "return to full functional activities."   *Id.*

---

[4]A sensation of tingling, or of "pins and needles," felt at the lesion site or more distally along the course of a nerve when the latter is percussed; indicates a partial lesion or early regeneration in the nerve.  *Stedman's* at 1772.

The ALJ concluded that, based on "the paucity of abnormal physical abnormalities on imaging and clinical examinations and on the evidence of substantial daily activities," Overy had the physical RFC to perform light work with the following additional limitations:

> The claimant can never operate foot controls with the right foot or left foot. She can operate hand controls with the bilateral hands frequently. She can handle items and use her fingers for manipulations with the bilateral hands frequently. The claimant can climb ramps and stairs occasionally but never climb ladders, ropes or scaffolds. She can balance, stoop, and crouch occasionally. She can never kneel or crawl. The claimant can never work at unprotected heights or with moving, mechanical parts. She can never operate a motor vehicle and never be exposed to whole body vibration. [] She can never ambulate on unimproved terrain.

(Tr. 14-15).

The Court finds under the circumstances of this case that the ALJ was not required to seek a medical opinion from a treating physician or consultative examiner, as Overy argues. *See*, *e.g.*, *Stallings v. Colvin*, No. 6:14-CV-03273-MDH, 2015 WL 1781407, at *3 (W.D. Mo. Apr. 20, 2015) (citing *Tellez v. Barnhart,* 403 F.3d 953, 956-57 (8th Cir. 2005)) ("Eighth Circuit case law reveals that an ALJ can appropriately determine a claimant's RFC without a specific medical opinion so long as there is sufficient medical evidence in the record."). The lack of a medical opinion evaluating the severity and limiting effects of Overy's physical impairments does not in this case necessitate a finding that the ALJ failed to fully and fairly develop the record. Although it is an ALJ's duty to develop the record, it is the plaintiff's responsibility to provide medical evidence to show that she is disabled. *See* 20 C.F.R. §§ 404.1512, 416.912. Ultimately, the claimant bears the burden of proving disability. The ALJ is required to order a consultative examination only if the medical records do not provide sufficient medical evidence to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

In the instant case, there was sufficient medical evidence for the ALJ to determine whether Overy was disabled and, therefore, no need for the ALJ to further develop the record. The medical records evidenced normal findings on examination, including a normal gait. The findings on x-ray of the right knee were mild. Overy testified that her pain medication provided relief, and brought her pain from a high level down to a "five." (Tr. 48.) She further testified that she could walk between a quarter of a mile and half-mile. (Tr. 54.) Objective testing confirmed findings positive for carpal tunnel syndrome; however, the ALJ considered the effects of Overy's carpal tunnel syndrome in limiting her to frequent operation of hand controls and manipulation with the bilateral hands. Overy testified at the hearing that the left carpal tunnel release she underwent in February 2015 was effective, and that she only experiences a "very low" level of pain in the left hand. (Tr. 42.) Although Overy testified that the right carpal tunnel release surgery was ineffective, her testimony is inconsistent with the findings of Dr. Boyer that Overy's examination was normal, she was "symptom free," and could return to full functional activities. (Tr. 752.)

The record provides a sufficient basis for the ALJ's decision, and she was not required to further develop the record. *See Hovis v. Colvin*, 2016 WL 4158867, at *12-13 (E.D. Mo. Aug. 5, 2016) (ALJ not required to seek consultative examination and appropriately relied solely on medical records when records demonstrated improvement with conservative treatment); *Peterson v. Colvin*, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) (holding "[e]vidence of Plaintiff's actual daily activities and the medical evidence that existed were sufficient to support the ALJ's determination about Plaintiff's capabilities").

Thus, the Court finds the ALJ's RFC determination was based on some medical evidence, as the law requires. As discussed above, the ALJ properly addressed the consistency of Overy's

subjective complaints and, in doing so, evaluated the medical record and her activities of daily living. "We may not reverse merely because we would have decided differently, or because substantial evidence supports a contrary outcome." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). The evidence substantiated the ALJ's RFC determination, and the ALJ's decision fell within a reasonable "zone of choice." *Id.*

**B.     Closed Period of Disability**

Overy lastly argues that the ALJ failed to consider a closed period of disability. She contends that she was unable to even occasionally handle and finger with her right upper extremity from August 2014 through July 2016 secondary to bilateral carpal tunnel syndrome. Overy cites the following evidence in support of a closed period of disability: she reported pain and numbness in the bilateral arms and fingers to Dr. Guarino on August 19, 2014; she presented to the emergency room with complaints of right arm numbness and burning on August 29, 2014; nerve conduction testing confirmed her diagnosis of carpal tunnel syndrome in November 2014; and she complained of bilateral hand pain and numbness to Dr. Guarino in September 2014, March 2015, and November 2015.

The Commissioner may award Social Security disability benefits either on a continuing basis or, where a once-disabling condition later ceases to be disabling, for a "closed period." *Harris v. Sec'y of Dep't of Health & Human Servs.,* 959 F.2d 723, 724 (8th Cir. 1992); *see also, e.g., Quaite v. Barnhart,* 312 F. Supp.2d 1195, 1200-01 (E.D. Mo. 2004) (affirming the ALJ's decision to award disability benefits for a closed period ending on a specific date where there was substantial evidence to support the ALJ's conclusion that Plaintiff had ceased being disabled as of that date). To qualify for a closed period of disability, the disabling condition must last for at least twelve months. 42 U.S.C. § 423(d)(A); *Karlix v. Barnhart,* 457 F.3d 742, 747 (8th Cir. 2006)

(rejecting a claimant's argument that the ALJ failed to consider whether he was entitled to a closed period of disability based on an impairment that lasted for about ten months). "However, even within a closed period, a claimant must still meet the definition of disability[.]" *Devary v. Colvin,* 5 F. Supp.3d 1023, 1032 (N.D. Iowa 2014).

As demonstrated above, the record shows Overy did not meet the definition of disability at any time during the relevant period and was thus not eligible for consideration of a closed period of disability. The evidence upon which Overy relies does not establish complaints rising to the level of a disabling impairment for the durational period. At best, the record supports the presence of increased symptoms related to the right upper extremity beginning in August 2014 and lasting until approximately February 2015. Such evidence does not meet the durational requirement for a closed period of disability. Overy occasionally included bilateral hand pain and numbness in her list of complaints to Dr. Guarino after this period, but maintained that her "greatest problems have been [her] knees." (Tr. 812, 796.)

In sum, after reviewing the parties' briefs, Overy's testimony, and the medical records, the Court finds no evidence to suggest that Overy's right upper extremity impairment was disabling for at least twelve months during the period of August 2014 through July 2016 and then ceased to be disabling, such as would have suggested entitlement to a closed period of disability. Thus, the Court finds that the lack of a specific discussion of a closed period of disability in the ALJ's decision does not warrant remand.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of March, 2019.